UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARCO CASTELLAR,

                Petitioner,

    — against —

FEDERAL BUREAU OF PRISONS,

                Respondent.
----------------------------------------------------------X

**MEMORANDUM and ORDER**

07-CV-3952 (SLT)(CLP)

**TOWNES, United States District Judge:**

## I. BACKGROUND

Petitioner Marco Castellar was convicted of making false claims to the Internal Revenue Service in violation of 18 U.S.C. § 287 and obstruction of justice in violation of 18 U.S.C. § 1512(c)(1). On March 11, 2005, petitioner was sentenced to fifty-one months of imprisonment and three years of supervised release.

After initially being declared ineligible, petitioner was admitted to the prison's Residential Drug Abuse Program on September 18, 2006. He completed the institutional portion of the drug treatment program on June 28, 2007, at which time he was transferred to a community corrections center, or halfway house. On September 21, 2007, he was transferred to home confinement, and, at the time of the filing of the papers in this case, he was to be released from home confinement on December 2, 2007. Pursuant to 18 U.S.C. § 3621(e)(2)(B), which authorizes the Bureau of Prisons to grant sentence reductions of up to one year for nonviolent offenders as an incentive for completion of the drug treatment program, the Bureau of Prisons reduced petitioner's sentence by forty-one days.

Petitioner now seeks a writ of habeas corpus under 28 U.S.C. § 2241 challenging the

length of the sentence reduction. Specifically, he argues that: 1) a Bureau of Prisons policy to maximize the length of time in a halfway house conflicted with the congressionally authorized incentive of sentence reduction; and 2) the delay in his admission to the drug treatment program rendered him practically ineligible for the full year sentence reduction in violation of the Due Process Clause.

## II. DISCUSSION

As an initial matter, petitioner's claims have not been mooted by petitioner's release from incarceration. Success on the merits would result in a reduction of petitioner's three-year term of supervised release, which is ongoing. *Levine v. Apker*, 455 F.3d 71, 76–77 (2d Cir. 2006).

### A. *The Bureau of Prisons Policy To Maximize Time in a Halfway House Does Not Conflict with 18 U.S.C. § 3621(e)(2)(B).*

To encourage participation in the Residential Drug Abuse Program, Congress authorized the Bureau of Prisons to offer sentence reductions of up to one year as an incentive: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). At the same time, Congress required the Bureau to ensure a reasonable period of time in transitional housing:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c) (2007).

2

With these provisions in mind, the Bureau of Prisons issued a policy statement that required the maximization, where practicable, of time in a halfway house up to a period of six months, even when such maximization would decrease the maximum sentence reduction under section 3621(e)(2)(B):

> Community transitional drug treatment services is a critical component of the residential drug abuse treatment program. Accordingly, the Warden is strongly encouraged to approve inmates who successfully complete a residential drug treatment program for the maximum 180 day period of CCC [(community corrections center, or halfway house)] placement. Similarly, CCMs [(community corrections managers)] shall, when possible, ensure that inmates required to participate in community transition services are placed in a CCC for the maximum amount recommended by the Warden.
>
> However, there may be administrative factors (e.g., bedspace limitations at a CCC) or community safety concerns (i.e., exclusionary criteria) that require consideration for a CCC placement of less than the recommended maximum of 180 days. Then, the fundamental goal for both the Warden and CCM is to seek placement for a period of time as near to 180 days as possible without negatively impacting bedspace limitations in contract facilities or jeopardizing community safety.
>
> Additionally, the 18 U.S.C. § 3621(e) release date shall be established to provide the residential drug program graduates with a reasonable opportunity to spend up to 180 days in a CCC even if this results in an early release period of less than 12 months. This means that unit teams must construct CCC release plans which maximize lengths of time in the CCC rather than the maximum reduction in sentence under § 3621(e).

Bureau of Prisons Policy Statement 5330.10 § 5.5(a)(2). Petitioner objects that this policy conflicts with the congressionally authorized sentence-reduction incentive by decreasing in many cases the maximum possible sentence reduction. This argument, however, is unpersuasive.

Because section 3621(e)(2)(B), which authorizes sentence reductions of up to one year, does not provide guidance as to the exercise of the Bureau's discretion, "all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the

3

statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" *Lopez v. Davis*, 531 U.S. 230, 242 (2001) (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)). The agency's policy of maximizing time in a halfway house, up to six months, is a reasonable interpretation of the statute. The Bureau reasonably concluded that time in transitional housing is needed to prepare the participants in the drug treatment program for reentry into free society, especially in light of Congress's directive to ensure, where practicable, that inmates spend a reasonable amount of time in transitional housing. 18 U.S.C. § 3624(c) (2007). Moreover, because categorical rules may be used in place of individualized determinations in situations of general applicability, *Lopez*, 531 U.S. at 243–44, the Bureau of Prisons did not violate section 3621(e)(2)(B) by determining that the need for transitional housing generally outweighs the benefits of a larger sentence reduction. Finally, while it could be argued that the Bureau would violate section 3621(e)(2)(B) by choosing never to grant a sentence reduction, and thereby failing to exercise its discretion at all, *see id.* at 243 n.4; *INS v. Yueh-Shaio*, 519 U.S. 26, 31 (1996), there is no indication that the Bureau's policy has rendered the sentence-reduction incentive a nullity.

Petitioner also alleges that the Bureau of Prisons provided the aftercare required by statute, 18 U.S.C. §§ 3621(e)(1), 3621(e)(5)(c), during his halfway house stay, instead of after his release from custody, on the basis of an erroneous view that time in a halfway house does not constitute incarceration. Petitioner's allegation, however, is irrelevant. Petitioner does not seek further aftercare now that he is no longer incarcerated. Rather, petitioner seeks a reduced sentence on the basis that the Bureau improperly sent him to a halfway house for three months and home confinement for another three. Regardless of whether aftercare was provided in the

4

halfway house, the Bureau reasonably interpreted the statute when it concluded that time in a halfway house should be maximized due to the importance of preparing participants in the drug treatment program for release into free society.

## B. *The Delay in Admitting Petitioner to the Drug Treatment Program Did Not Violate the Due Process Clause.*

Before the Bureau of Prisons ultimately admitted petitioner to the drug treatment program, the Bureau initially denied petitioner admission on the ground that he had not demonstrated substance abuse within the twelve months prior to his incarceration. Petitioner challenges the validity of that requirement, as well as other aspects of the Bureau's procedures, and maintains that the delay, in combination with the policy to maximize time in a halfway house, prevented him from receiving a larger sentence reduction. He claims that the alleged procedural infirmities that caused the delay deprived him of a protected liberty interest in violation of the Due Process Clause. Petitioner's argument, however, is unpersuasive.

Petitioner cannot establish a violation of the Due Process Clause because he was not deprived of a protected liberty interest. A prisoner does not have a protected liberty interest in eligibility for rehabilitative programs. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980); *Green v. Armstrong*, No. 98-cv-3707, 1999 WL 642910, *1 (2d Cir. Aug. 20, 1999). A prisoner also does not have a liberty interest in the one-year sentence reduction for completion of the drug treatment program because the Bureau has complete discretion under section 3621(e)(2)(B). *See, e.g., Venegas v. Henman*, 126 F.3d 760, 765 (5th Cir. 1997) ("The loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation of a constitutionally protected liberty

interest."). The Second Circuit's treatment of parole proceedings is instructive. In that context, the Court has explained that "a prisoner's mere hope for the possibility of freedom on parole, unsupported by some basis for his claiming entitlement to it, is insufficient, since it depends wholly on the unfettered exercise of discretion by a board or other authority." *Pugliese*, 617 F.2d at 922 (citing *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979)); *see also Berard v. State of Vt. Parole Bd.*, 730 F.2d 71, 73–74 (2d Cir. 1984). "Neither the mere possibility of release nor a statistical probability of release gives rise to a legitimate expectancy of release . . . ." *Berard*, 730 F.2d at 73–74 (citations omitted). Petitioner Castellar similarly had no entitlement to a sentence reduction and, as a result, cannot establish a violation of his due process rights.

## III. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is denied. A certificate of appealability shall not issue because petitioner has not made a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112–13 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from the judgment denying the instant petition would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438 (1962).

**SO ORDERED.**

Dated: Brooklyn, New York
May 28, 2009

s/ SLT

SANDRA L. TOWNES
United States District Judge